Okay, and we can proceed with case number 512-0486, People v. Burnley. Thank you, Your Honor. May it please the Court and Counsel, my name is Robert Markfield and I represent Defendant Appellant Terrell Burnley in this matter. The defendant, Terrell Burnley, is not guilty of residential burglary, merely guilty of simple burglary. The house in Cahokia that Burnley allegedly broke into is not a dwelling place within the statutory definition articulated in the residential burglary statute in that no owner or occupant actually resided there or intended to reside there within a reasonable period of time. The term reside, I note, though undefined by statute, is generally understood to include intent and permanency of abode, not just mere physical presence. The following three factors, considered in conjunction, distinguish this case from all those cited by the State and establish that there was here no intent and permanency of abode even in the light most favorable to the State. First, there was no evidence or testimony elicited that the owner of the Cahokia residence, complainant Lorena Riley, or any tenant of Riley's intended to spend the night in the Cahokia house within a reasonable period of time. Second, Riley had bought a house in Shiloh the year before, a town 20 miles away, and testified that she had been living there in Shiloh on and off for a year. With regard to the Cahokia house, Riley agreed on cross-examination that no one was staying in that house. She agreed, moreover, that the Cahokia house was more or less a holding place for some of her stuff. Thus, she had abandoned the Cahokia house. Was it kind of a semi-office or something? Did she do something there, I thought I read? Yes, Your Honor. She actually kept quite a bit of business paperwork there and computers and printers. And how about a bed? I don't think anything was actually removed, was it? A bed? You could stay there. Everything was normal? Yes, Your Honor. You could, but there's no evidence that she did spend the night there at any time. But she allegedly moved, is that what you're saying? Yes, Your Honor. The business paperwork she may have used at her time as an office, but I don't believe that that alone is residence. And the bed, the furnishing, there's no evidence that she actually used that stuff, that she cooked there, that she slept there. It was merely furnished. It was kept up, but there was no evidence that she used that stuff. And we're talking about class what and what? I believe it's two or three, Your Honor. So class three is what? Is burglary and two is... And what's the difference on sentencing those two? Your Honor. Maximum and minimum. Your Honor, it slips my mind, I think, Your Honor. If we reduce this to burglary instead of residential burglary, do we have to send it back for resentencing? I believe so. Well, the court does have latitude to impose a sentence. The defendant is asking for resentencing, though, in the brief. And does the defendant have any priors? I believe the defendant does have priors. And there was a record on it. Is that in the record? That's in the record, yes. Do you know what they are? I believe... Non-residential burglary, I'm assuming. I think so, Your Honor. The third thing, in addition to abandonment and that no person had spent the night there within a reasonable time, the third thing is that there is no evidence that she conducted significant domestic activities in the house. Yes, she was a conscientious owner who kept the house furnished and locked. Now, let me ask you another question. Was he and why... The electricity was on and I... And was the door... Were there door locks on the door? The door was locked, yes. She was a conscientious owner, but I do not believe that that makes this place a residence. And she had never... It wasn't for sale? No, Your Honor, it was not for sale. Yet, one could infer that the reason she kept it so furnished and tidy was because she had intended for it to be placed on the market at some point in the future. But there is no evidence that she used it. She kept it neat, but there is no evidence that she used it for sleeping, for cooking, for entertaining, for cooking meals, for anything that could be considered a significant domestic activity. And if it was occupied, how could you know if it was occupied or unoccupied? You could tell. I'm sorry, Your Honor. How could you tell by looking at this house if it was an occupied residence or a non-occupied residence? From the outside, I do not believe that you could tell. As in the case cited in the defendant's brief, the recent case of People v. Roberts, this court should not hesitate to reverse the... I will say one more point. We don't know how often she visited. She testified that she visited periodically. But that's it. We know she visited four days earlier, but that's it. How frequently did she visit? What was the length of those visits? Was it once a month, every few months? How often was she there? That is unknown. And how much time did she spend there? That is unknown. The record is unclear, and I believe that the prosecution has the obligation to elicit enough facts from which an inference can be drawn to meet the element of dwelling. Now, are there any Illinois cases on residents of not being at home, other than voting residence rules? Is there any other cases on this type of burglary in Illinois? In Illinois, I'm relying on People v. Roberts, a very recent case. Is that a Supreme or is that an appellate? It's an appellate court case. What district? I'm in the First District. And in Roberts, the complainants own the house. So there's no Fifth District cases on that? No, Your Honor. Any indication she had ever or the last time she had spent a night there? There is no indication whatsoever of the last time she had spent a night there. I think, though, it's telling that she testified that she simply used the place for storage to store some of her stuff, as she put it, her belongings. And that, as she put it, no one was staying at the house. Now, maybe I didn't read this, but is there something about, did she have a computer hooked up in that building? Yes, Your Honor, she did. And was it like a cable or was it a dish or, you know? Nothing on that is in the record, Your Honor. She had a computer and she had printers. And it was working? And business paperwork. I am assuming because she was so upset when the defendant and the co-defendants broke the stuff. But I think that that only goes to an inference that the place could have been used as a part-time office, which is different than a residence. A person can spend a lot of time in their office and have expensive equipment in their office. However, I do not believe that that makes a place a residence. Intent and permanency of a goal, that makes a place a residence, Your Honor. What was your business, do you know? I believe that it had, she owned a fast food franchise. That was one of the things. And another thing is she, I seem to recall that she rented property. The case I refer to, rely on, is People v. Roberts. Complaints still own the house. We placed it up for sale but haven't secured a new buyer. In Roberts, the house was vacant. That is true. However, I think that this place was, even if not vacant all the time, it was abandoned as a residence. The stuff that she kept there, there is no evidence that it constituted even a substantial part of her belongings. And again, she testified that she simply used the place, the house, for storage. She characterized that stuff, the items still in the Cahokia house, as some items that I hadn't moved to the other house. I know even that the security system, she did keep the house locked. But the security system had been turned off because she was in the process of moving items out of the Cahokia house. So I do not believe it is a residence. I reiterate the most salient fact. Reilly? Aye. Your Honor, Reilly agreed on cross-examination that nobody was staying in the house and that it was used more or less as a holding place for her stuff. For that reason, Your Honor, I ask that the commission be reduced from residential to simple burglary. Was there any evidence in this case of any zoning? Was that a residential zoning area? I don't even know if it's in the evidence. I'm going to assume that there was. There was no direct evidence, but the neighbor's house was occupied. Was there a house on both sides of this house and across the street? There's only evidence that… That's okay. On the record that one of the houses was occupied, although one of the crime scene photographs indicated that there was a residence on both sides. But there was a neighbor and the next door was occupied. Did you run across any neighboring states that have a similar law of residential burglary versus burglary? Like Missouri or India? I didn't, Your Honor.  Thank you, Your Honor. May it please the Court? Counsel? Jennifer Camden on behalf of the people. The state presented evidence from which a reasonable jury could have found that this home was a dwelling in which the owner resided or intended to reside. The owner kept property there, including clothing, a bed, two televisions, a table and chairs that were set up in the area. She had a printer in the kitchen, a printer, business paperwork. She said she visited the home often to check on it and to, quote, do things there. Unfortunately, what those things were is not explained. We know that she kept the home secured against outsiders. She kept the house locked, both front and back doors, that there were front and back gates, which she also kept locked. She kept the electricity on. She changed the bulbs and the security lights four days prior to her discovery of the burglary. We know that she was in the process of making improvements to the home. She bought a stackable washer-dryer unit that had been delivered to the home. She had planned on setting that up in the future. And she did not testify that she intended to permanently abandon or vacate or sell the home. So on this evidence, can we say that no reasonable jury could have found that this was a dwelling under Illinois law? She said she was in the process of moving possessions out of the home and that had been living primarily in Shiloh, the nearby town, on and off for a year. She said she bought that home, the one in Shiloh, for her parents, and then on and off had been spending more and more time living at her parents' home. But she had not abandoned this home in Cahokia, and there was evidence that she intended to return to it as her possessions remained there. And she said that it was not just the storage unit. She disagreed when a defense counsel at trial tried to compare it to a storage unit. Were there jury instructions that described what a residence was? The jury was instructed as to the definition of dwelling, yes, Your Honor. I mean, sorry, dwelling. What was the instruction? I assume it tracks the statute. I'm not sure I cited that specifically in the brief, Your Honor. Well, we've still asked the questions. Is there an IPI on dwelling? I don't remember if there is. I don't remember either. I'm afraid I can't answer that, Your Honor. But under the defendant's interpretation of this statute, oh, I'm sorry, I can tell you this, that the jury sent out a note during deliberations about how to tell whether she resided in the building, and the judge instructed the jury to consider. The instructions that it had received. So I presume that it's very important. We'll look at the instructions. Sorry? Yeah. Yes, Your Honor. So if the circumstances of the house, whatever extent of use of the house, I gather that was relatively uncontested in the jury trial. Yes, I'd say so. So do we determine whether it's a dwelling or not as a matter of law? I think the question before this court is whether any reasonable jury could have found that under these circumstances, the home constituted a dwelling within how that term was defined in the statute. Did either attorney deal with that question in closing argument to the jury? Yes, Your Honor. The state in closing argument. Oh, I'm sorry. I do have notes on the jury instructions. The jury was instructed that a dwelling place means a house in which at the time of the alleged offense the owners actually reside or in their absence intend within a reasonable period of time to reside, and that's a record at page 291. And the state argued that this was a dwelling place within the meaning of the statute, and I think the defense did as well since it also argued that she was not actually residing there and didn't intend to reside there. So I'd say that both sides argued the definition of dwelling, yes. But under defendant's interpretation of dwelling, a homeowner loses his or her status as a resident of a home at some undefined point during the moving process before that resident vacates the premises. And I argue that this would be absurd and contrary to the legislature's intent when enacting the residential burglary statute, which was to protect the sanctity of the home and avoid the greater danger from the burglary of a home. In each case that both parties cite, the court is asking whether the burglars could have run into, in the structure that they're burglarizing, a person for whom the structure is home, a home, not necessarily the home, but a home. And that's why vacation homes and weekend cabins and these types of structures are encompassed within the definition of dwelling, whether the burglars could run into a person for whom that is home. And certainly a home from which the owner is planning to move and is in the process of moving belongings is no less likely to contain people than a vacation home or a weekend cabin. Also, in Roberts, the owners of that home had turned over the means of access to the home to the realtor and had left the state. They'd moved from Illinois to North Carolina, and there was evidence in the record that they never intended to return to that home. They had permanently vacated that home, abandoned the home, and taken all their property with them. The situation in that case involved the theft of copper piping. So Roberts is very different on the facts than in this case here, where the homeowner had not abandoned or permanently abandoned the home and had not performed that affirmative act of abandonment, which the Illinois cases in other contexts have said is necessary to cut off residency. Residency is presumed to continue unless there's that affirmative act cutting it off. I'd also like to point out that in a case called McGee, which the people cite in the answer brief, the court found that a home was a dwelling where it had been burned in a fire and no one had slept there for months, but the owners continued to keep it locked and checked on the home every day. The court held that this home was not abandoned because the owners showed concern for privacy, sanctity of the home, and the potential for serious harm by locking and boarding up that home and checking on it every day. And I'd argue that the homeowner in this case showed that same concern. She also had not abandoned it. She also showed that concern for privacy and sanctity of the home by locking it and boarding it up. As a matter of fact, the first thing that she did when she discovered the burglary was she ran down to the hardware store and bought some boards to try to board it up. And I'd also note that, in this case, what happened was she went to the home four days after having visited it last, discovered the burglary, discovered the window had been broken out, ran down to the hardware store to get some tools, and within an hour or two of her discovery, the burglars came back and carried away the washer and dryer that was found out in the yard after the police came. And so, in this case, the burglars came within an hour or two of happening upon the homeowner in her home, which was the chief evil that the legislature sought to protect against in enacting the residential burglary statute and in creating this more severe class felony for that offense. Similarly, in Moore, the court held, and this was an appellate court case, found that the home was a dwelling where the owner locked it up and traveled out of state for a month while intending to return to the home and sell it. Now, he also ended up, when he returned to Illinois to sell it, he also ended up staying there for a brief period of time. But the court didn't say that that was the paramount concern. It was just that he had not abandoned it and he intended to come back to it, and that was enough. And so, for these reasons, the people – oh, and I'm sorry if I can make one more point. In two cases cited in the People's Answer Brief, Smith and Benj, which involved a vacation home and hunting cabin, those were – and in both of those cases, the court found that the structure was dwelling because the owners intended to return to that residence. But in those cases, those structures were never the homeowner's primary residences. These were hunting cabins. Whereas in this case, the home in Cahokia had at one time been the homeowner's primary residence, and she had been gradually transitioning from that residence. But her residency had not been cut off by an affirmative act of abandonment. Thank you. The state cites a definition of abandonment, and I agree. To establish a new residence, the person must physically move to a new home and live there with the intention of making it her permanent home. I believe that Complainant Lorraine O'Reilly did just that. She said she had bought the house in Shiloh over a year ago. She said that she had lived there most of the time, and she said that the house in Cahokia was simply a place where she kept some of her stuff and that nobody stayed there. That, I believe, is abandonment. It is true that vacation homes and cabins are residences. Vacation homes were specifically meant to be by legislative action. But nonetheless, mere presence is insufficient. Whatever you may say about the importance of the sanctity of the home and protecting inhabitants, which are concerns, mere presence is not sufficient to render a place a residence. There has to be Wasn't the legislative intent of this act to avoid confrontation of a burglar versus someone in the home? Yes, Your Honor. That was a significant concern, and I do acknowledge that. However, mere physical presence is simply not enough to establish residence. Residence is intent and permanency of a vote. So there has to be those features for there to be a residence, and those were not present in that case. Moreover, we do not know how often she was there. I believe the state said she testified that she was there often. My memory is that Lorraine O'Reilly testified that she was there periodically, but she never said what that meant. She never said how often she visited, whether she stayed the night there ever, or intended to spend the night. An important distinction between all the cases, the fire-damaged house case, and the others, the owner intended to go back there at some reasonable time in the future and live there. Nothing like that here. If we knew more about what she did there and how often she visited, then perhaps an inference of residence could be made, but we don't. She said it was simply a place to store her stuff. Thank you. Thank you, Your Honor. The court will take a case under advisement on the issue of opinion in due course, if you're excused.